SECURITY SAVINGS & COMMERCIAL BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59523. Promulgated October 31, 1933.

*W. W. Spalding, Esq.*, and *Albert L. Clothier, Esq.*, for the petitioner.

*W. F. Wattles, Esq.*, and *B. D. Daniels, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: This proceeding involves the redetermination of deficiencies in income tax for the years 1927 and 1928 amounting to $4,364.85 and $85.94, respectively. The issue presented relates to the respondent's refusal to allow as a deduction from gross income in 1927 the sum of $31,580 claimed by the petitioner as a loss sustained through the purchase and liquidation of 2,000 shares of Central Savings Bank stock. The petitioner has abandoned all other issues raised by the pleadings. The facts were stipulated and are substantially as follows:

The petitioner is a corporation, incorporated under the laws of the State of West Virginia, and during the year 1927 was engaged in the banking business in Washington, D.C. On June 14, 1927, Julius I. Peyser, petitioner's president, obtained an option from

Francis M. Savage, the then president of the Central Savings Bank, a corporation incorporated April 30, 1925, under the laws of the District of Columbia and engaged in the banking business therein, for the acquisition by purchase of 1,001 shares of the capital stock of the latter named bank at $140 per share. A special meeting of the board of directors of the petitioner was held on June 24, 1927, at the request of its president, for the purpose of considering the question of exercising the option and, subject to the approval of the Comptroller of the Currency, establishing a branch of the petitioner bank on the premises occupied by the Central Savings Bank. The board of directors of the petitioner bank thereupon voted to accept an assignment of the option; to authorize the vice president of the petitioner to apply to the Comptroller of the Currency for authority to establish a branch bank at the address of the Central Savings Bank; to take over, upon the Comptroller's approval, and convert the assets and liabilities of the Central Savings Bank to the use of the petitioner; to proceed to the operation of a branch bank at the location of the Central Savings Bank. The petitioner's vice president was authorized to vote the stock of the Central Savings Bank for the purpose of liquidating that bank and canceling its charter. Thereafter authority to establish and operate a branch bank was applied for and granted.

On June 25, 1927, a contract was entered into between the petitioner, on the one hand, and Francis M. Savage and other stockholders of the Central Savings Bank, on the other, by which such stockholders agreed to sell to the petitioner 1,701 shares of the capital stock of the Central Savings Bank at the price of $140 per share. By June 30, 1927, the petitioner had acquired such a number of additional shares of the stock of the Central Savings Bank that on that date it owned 1,839 shares of such stock, for all of which the petitioner paid $140 per share. By the contract of June 25, 1927, between the petitioner and the stockholders of the Central Savings Bank it was agreed, among other things, that before making final payment for the stock, representatives and agents of the petitioner might inspect the books and records of the Central Savings Bank, and such representatives and agents did so inspect them and appraised the Central Savings Bank's assets and liabilities before the purchase of its stock was completed.

At a meeting of the board of directors of the Central Savings Bank held on June 30, 1927, the then acting directors of that bank resigned and were replaced by nominees of the petitioner. The then president, vice president and treasurer of the Central Savings Bank also resigned and the vacancies were filled by the election of representatives and nominees of the petitioner bank. On the same day,

with the approval of its stockholders, the Central Savings Bank entered into an agreement with the petitioner by which the former bank sold and delivered to the petitioner all of its "notes, ledgers and other accounts, choses in action, bills receivable, real estate and any and all other assets, real, personal and mixed of every nature, kind and character whatsoever * * *." On the same day also, namely, June 30, 1927, the stockholders of the Central Savings Bank directed and empowered the newly elected officers to apply to the Supreme Court of the District of Columbia for a decree of dissolution.

On June 30, 1927, the date of the acquisition by the petitioner bank of all of the assets of the Central Savings Bank the balance sheet of the latter bank was as follows:

### CENTRAL SAVINGS BANK

STATEMENT AT CLOSE OF BUSINESS JUNE 30TH, 1927

#### Assets

| | | |
|---|---:|---:|
| Cash and Cash Items | | $85,912.72 |
| Bonds | | 92,214.06 |
| Real Estate Loans | | 574,583.25 |
| Loans and Discounts | | 152,768.66 |
| Furniture and Fixtures | | 10,000.00 |
| Interest accrued on Bonds | $1,989.57 | |
| Interest accrued on Real estate loans but not collected | 9,347.20 | |
| Commissions accrued on Savings life Insurance | 256.78 | |
| Demand Loans Interest | 1,835.14 | |
| | | 13,428.69 |
| | | $928,907.38 |

#### Liabilities

| | | |
|---|---:|---:|
| Capital Stock | | 200,000.00 |
| Surplus | | 50,000.00 |
| Profit and Loss | | 6.07 |
| Savings Deposits | 614,781.96 | |
| Christmas Savings Club | 46,964.00 | |
| Time Deposits | 5,500.00 | |
| Cashier's checks | 7,080.35 | |
| | | 674,326.31 |
| Reserve for Interest | | 4,575.00 |
| | | $928,907.38 |

Between July 1 and October 18, 1927, the petitioner acquired the remaining outstanding 161 shares of capital stock of the Central Savings Bank for $140 per share. By such acquisitions the petitioner became the owner of all of the capital stock of the Central Savings Bank, namely, 2,000 shares. On November 9, 1927, at a special meeting of the stockholders of the Central Savings Bank, a resolution was adopted authorizing and directing the payment of a final liquidating dividend of $124.21 on each of the 2,000 shares of stock outstanding, or a total dividend of $248,420.

On November 17, 1927, the petitioner bank received the sum of $248,420 as a final liquidating dividend voted by the directors of the Central Savings Bank on November 9, 1927. By this payment the Central Savings Bank divested itself of all its assets and no further distribution to stockholders was ever made by it.

Subsequent to June 30, 1927, no business was transacted by the Central Savings Bank. After that date the petitioner, having taken possession of all the assets of the Central Savings Bank and also of the banking house occupied by that bank located at 710 Fourteenth Street, NW., conducted a branch banking business at that location for a period of 10 months. Thereafter the petitioner moved its branch bank to 1518 K Street, NW.

A consolidated income tax return was never filed on behalf of the petitioner and the Central Savings Bank.

On December 28, 1927, in conformity with resolutions duly adopted by its board of directors, the petitioner charged to profit and loss on its books the sum of $31,580, the loss claimed to have been sustained by it through the purchase and liquidation of 2,000 shares of Central Savings Bank stock.

In computing net income for the calendar year 1927 the petitioner claimed as a deduction the sum of $31,580 representing the difference between the cost of the 2,000 shares of the Central Savings Bank stock, purchased at $140 per share, and the amount distributed by the Central Savings Bank as a liquidating dividend, namely, the sum of $248,420. This deduction was disallowed by the respondent.

On the foregoing facts the petitioner contends that since it purchased the 2,000 shares of the Central Savings Bank's capital stock at a cost of $280,000 and received as a final liquidating dividend only the sum of $248,420, it is entitled, under the statute, to deduct the difference from the gross income as a loss sustained during the taxable year. The respondent, on the other hand, contends in effect that the purchase of the stock and the purchase of the assets of the Central Savings Bank were both parts of the same transaction, which was entered into by the petitioner for the purpose of establishing a branch bank on the premises occupied by the Savings Bank, and that the excess of the amount paid for the stock over the amount received as a final liquidating dividend constitutes a payment by the petitioner for the good will of the Savings Bank. The respondent, therefore, contends that since good will is a capital asset, the sum paid to acquire it is not deductible from income as a loss.

It may be conceded that the petitioner's purpose was to establish a branch bank and that to that end it purchased the stock and assets of the Central Savings Bank. However, the design and intent of a taxpayer are not conclusive of his tax liability. Tax liability must be determined upon what was actually done, *Anna M. Harkness,*

1 B.T.A. 127; *William H. Mullins,* 14 B.T.A. 426, and not upon the effect of what was done; *B. F. Saul,* 4 B.T.A. 639, 647; nor upon the taxpayer's design and purpose, *United States* v. *Phellis,* 257 U.S. 156.

On June 30, 1927, the petitioner owned more than two thirds of the Savings Bank's stock. However, there was still an outstanding minority of 161 shares. Therefore, at that time, if the petitioner desired to acquire the assets of the Savings Bank immediately it could do so only by a purchase for cash. On June 30, 1927, the petitioner did so acquire such assets, paying therefor the sum of $250,006.07 and at the same time assuming the Central Savings Bank's liabilities. At that date the latter bank was a going concern. It had a substantial amount of deposits. Consequently, its good will or " going concern value " was a substantial asset. *Merchants Natl. Bank,* 6 B.T.A. 1167. The good will was not carried on the Savings Bank's books as an asset but, being an asset, it was included among the assets purchased by the petitioner under its contract with the Savings Bank by which it purchased all of the Savings Bank's " assets, real, personal and mixed of every nature, kind and character whatsoever."

No loss to the petitioner resulting from the purchase of any of the assets referred to, at the price paid under the contract of sale, is shown by the evidence and none is claimed here by the petitioner. So far, therefore, the proceeding is distinguishable from *Union Natl. Bank,* 18 B.T.A. 468; *Bank of Terrebonne & Savings Bank,* 19 B.T.A. 1286; *Peoples Natl. Bank,* 23 B.T.A. 815, and similar proceedings in which we have held that where capital assets were purchased a deduction may not be allowed as an ordinary expense, nor may a resulting loss be deducted from gross income.

The 2,000 shares of the capital stock of the Savings Bank were purchased by the petitioner from the stockholders of the Savings Bank and not from the Savings Bank itself. In this respect this proceeding is similar to *Putnam Trust Co.,* 26 B.T.A. 655, in which we held that the purchase by the Trust Co. of stock of the Greenwich National Bank was an investment and that the excess of cost over the amount received by the Trust Co. on liquidation of the bank was a deductible loss.

Moreover, the parties to the contract for the purchase and sale of the stock were not the same as the parties to the contract for the purchase and sale of the Savings Bank's assets. In the one case the parties to the contract were the petitioner and the stockholders of the Savings Bank; in the other case the parties to the contract were the petitioner and the Savings Bank itself. A corporation is legally distinct from its shareholders and in the absence of fraud and unfairness its separate transactions will not be disregarded. *E. H. Nielsen Co.,* 26 B.T.A. 223. Nor is there in the two contracts identity

of subject matter or of consideration. On the one hand, shares of stock were purchased for the sum of $280,000, while on the other hand physical assets and good will were purchased for the sum of $250,006.07. We are, therefore, confronted here with two contracts differing in parties, subject matter and consideration. They are, therefore, separate in substance and in form. In such case we may not consider them as constituting one transaction in order to impose a tax. *W. A. Hoult*, 23 B.T.A. 804; *Georgia Savings Bank & Trust Co., Administrator*, 28 B.T.A. 1152.

It is true that at the time the final liquidating dividend was declared and paid by the Savings Bank the petitioner had acquired all that bank's capital stock and that the Savings Bank's only asset was the cash paid to it by the petitioner bank for the assets hereinbefore referred to. But we may not ignore the corporate entities of the two banks, *Burnet* v. *Riggs Natl. Bank*, 57 Fed. (2d) 980; affirming 17 B.T.A. 615, nor may we ignore the contract between the petitioner and the stockholders of the Savings Bank pursuant to which the shares of stock here involved were purchased.

We hold that the difference between the cost of the stock to the petitioner and the amount received on liquidation is deductible as a loss from the petitioner's income for 1927.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

GOODRICH and LEECH dissent.