Estate of Emanuel Ulman, the Citizens & Southern National Bank, Co-trustee, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 100771.   Promulgated March 10, 1942.

*John W. Townsend, Esq.,* and *M. H. Barnes, C. P. A.,* for the petitioner.

*F. L. Van Haaften, Esq.,* for the respondent.

518

## OPINION.

BLACK: In our opening statement we set forth briefly the contentions made by the petitioner and respondent, respectively. We shall now consider those contentions in connection with our findings of fact.

The evidence plainly shows that, when Fenner & Beane exchanged the 100 shares of International common for the 800 shares of Coca-Cola common, it was acting for the account of petitioner and not for its own account, and we do not understand petitioner to contend otherwise. In any event, we have found and also hold that the exchange is accountable to petitioner.

Petitioner's principal contention is that the exchange of the 100 shares of International common for the 800 shares of Coca-Cola common and the sale of the latter for cash should in substance be regarded as if petitioner had sold the 100 shares of International for cash. It is true that if petitioner had actually sold the 100 shares of International to an outsider for cash, it would have been entitled to the benefits of section 117 (a) of the Revenue Act of 1936, and, since it had held the 100 shares for more than five years but not for more than ten years, only 40 percent of the total profit would have been taken into account in computing net income. The material provisions of section 117 (a) are in the margin.[1] It is also true that petitioner started out to do that very thing when it placed its order with Fenner & Beane to sell the 100 shares. But the transaction was not consummated as it was originally planned. There had been no sales of International on the New York Stock Exchange since Novem-

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) GENERAL RULE.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

* * * * * * *

40 per centum if the capital asset has been held for more than 5 years but not for more than 10 years;

ber 1934, whereas Coca-Cola common was being bought and sold almost daily. At that time there existed the irrevocable resolution of the board of directors of International whereby the stockholders of International might at any time exchange their shares in International, plus a small exchange fee, for 8 times the number of shares of Coca-Cola. Petitioner was advised by Fenner & Beane that it would facilitate matters if petitioner's 100 shares of International common were first exchanged with International for 800 shares of Coca-Cola common. Following this advice, petitioner, through its trust officer Scott, told Fenner & Beane to "Go ahead and handle it in that manner." Fenner & Beane then went ahead on September 12, 1936, and made the exchange, and charged petitioner with the transfer tax and exchange fee, amounting to $65, which petitioner later paid. The 100 shares of International common transferred to International were permanently retired. Fenner & Beans then on September 29 and October 5, 1936, sold the 800 shares of Coca-Cola common to miscellaneous buyers other than Coca-Cola, and remitted the net proceeds therefrom to petitioner.

Petitioner in support of its contention that there was in substance but one transaction involved, namely, a sale of International common for cash, thereby disregarding as an incidental step the actual exchange of International common for Coca-Cola common, cites and relies upon the same line of cases [2] that the petitioner in *Gus T. Dodd*, 46 B. T. A. 7, relied upon in support of his contention, as stated in our report in that case, that "should the Board hold, as we have above, that petitioner must be regarded as having exchanged his International A for Coca-Cola A, then the transaction must be viewed as a whole; and that the separate steps in a single transaction can not be regarded as separate transactions."

We held in the *Dodd* case that the exchange of International A for Coca-Cola A was one of the material facts of the case and that it could not be disregarded. We think the same holding must apply here as to the exchange of International common for Coca-Cola common. Although in the instant case petitioner exchanged International common for Coca-Cola common, and sold the Coca-Cola common to several miscellaneous purchasers other than Coca-Cola for cash,

---

[2] *Tulsa Tribune Co.* v. *Commissioner*, 58 Fed. (2d) 937; reversing 21 B. T. A. 1405; *Carter Publications, Inc.*, 28 B. T. A. 160; *Prairie Oil & Gas Co.* v. *Motter*, 66 Fed. (2d) 309; *West Texas Refining & Development Co.* v. *Commissioner*, 68 Fed. (2d) 77, affirming 25 B. T. A. 1254; *Ahles Realty Corporation* v. *Commissioner*, 71 Fed. (2d) 150; certiorari denied, 293 U. S. 611, affirming B. T. A. memorandum opinion; *Helvering* v. *Security Savings & Commercial Bank*, 72 Fed. (2d) 874, reversing 29 B. T. A. 176; *Helvering* v. *General Utilities & Operating Co.*, 74 Fed. (2d) 972; reversed on other grounds, 296 U. S. 200; *First Seattle Dexter Horton National Bank* v. *Commissioner*, 77 Fed. (2d) 45, affirming 27 B. T. A. 1242; *Bassick* v. *Commissioner*, 85 Fed. (2d) 8; certiorari denied, 299 U. S. 592, affirming 30 B. T. A. 163; *Muskegon Motor Specialties Co.*, 35 B. T. A. 851; and *Commissioner* v. *Ashland Oil & Refining Co.*, 99 Fed. (2d) 588; certiorari denied, 306 U. S. 661, reversing 32 B. T. A. 777.

whereas Dodd exchanged International A for Coca-Cola A, and sold the Coca-Cola A to the Coca-Cola Co. for retirement and for cash, we do not think these differences in the facts of the two cases warrant any different result for the reason that, in our opinion, the principle involved in both cases is the same.

The irrevocable resolution of the board of directors of International relative to the exchange of International stock with International for Coca-Cola stock was applicable to both common and class A stock. So when Fenner & Beane in accordance with this irrevocable resolution exchanged with International for petitioner's account the 100 shares of International common, which were then retired, and received from International the 800 shares of Coca-Cola common, the receipt of such shares for petitioner's account represented, contrary to petitioner's alternative contention, "amounts distributed in partial liquidation" as that term is used in section 115 (c) and defined in section 115 (i) of the Revenue Act of 1936.[3]  *W. R. Prescott*, 31 B. T. A. 17, petition for review denied, 76 Fed. (2d) 3; rehearing denied, April 30, 1935; *Rose* v. *Trust Co. of Georgia*, 77 Fed. (2d) 355; *L. B. Coley*, 45 B. T. A. 405; *Gus T. Dodd*, *supra*. If petitioner realized any gain from such "partial liquidation", the statute plainly provides that "Despite the provisions of section 117 (a), 100 per centum of the gain so recognized shall be taken into account in computing net income." With this plain provision of the statute before us, we do not think we can ignore or disregard the partial liquidation of International and treat the transaction as if petitioner merely sold its International common to an outsider for cash.

The respondent determined that on the exchange of the 100 shares of International common for 800 shares of Coca-Cola common petitioner realized a recognizable gain of $67,551.02 as representing the difference between the adjusted basis of International common of $29,375 and the fair market value of Coca-Cola common of $96,926.02; that petitioner realized neither gain nor loss on the Coca-Cola common; and that under section 115 (c), *supra*, 100 percent of the gain of $67,551.02 should be taken into account in computing net income. This

[3] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.
 *     *     *     *     *     *     *
 (c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117 (a), 100 per centum of the gain so recognized shall be taken into account in computing net income. * * *
 *     *     *     *     *     *     *
 (i) DEFINITION OF PARTIAL LIQUIDATION.—As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

determination of the Commissioner it seems to us is correct and must be sustained. *Gus T. Dodd, supra.*

The differences in the treatment, so far as tax consequences are concerned, of the gain which a taxpayer receives from a partial liquidation of his shares from that where he sells them outright are due to a change which Congress made in the Revenue Act of 1934. Prior to that act the tax consequences would have been the same and there would have been no occasion for the controversy which we have here. See *W. C. Robinson*, 42 B. T. A. 725.

It is also undoubtedly true that, if the taxpayer had sold its International stock instead of exchanging it in partial liquidation, the tax consequences of such sale would have been as petitioner contends they should be in this proceeding.

It takes no argument, however, to establish the proposition that tax consequences are frequently very different under one state of facts from what they are under another state of facts. Cf. *General Securities Co.*, 42 B. T. A. 754; affd., 123 Fed. (2d) 192. The court in affirming our decision in that case, among other things, said:

> Counsel for the taxpayer assert that had the corporation declared a cash dividend of $1,068.33, sold the Tramway stock, and paid the dividend out of the proceeds derived from the sale, the taxpayer could have deducted the amount of the loss suffered through the sale of the stock. The simple answer is that the taxpayer did not follow that course and its tax liability must be determined on the basis of what was done and not what might have been done.

So we think it must be in the instant case.

*Decision will be entered for the respondent.*