BRITT v. COMMISSIONER OF INTERNAL REVENUE.

No. 4632.

Circuit Court of Appeals, Fourth Circuit.

Aug. 14, 1940.

Robert A. Littleton, of Washington, D. C., for petitioner.

Lee A. Jackson, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

In order to decide this case, we must determine the basis for computing the gain realized by the taxpayer in 1934 from the redemption of 72 shares of preferred stock of United Carbon Company at $110 per share. The taxpayer acquired the stock in 1925 in the course of a liquidation distribution of the assets of the Liberty Carbon Company, of which he was a stockholder. In the latter year, the Liberty Carbon Company and a number of other corporations, engaged in the manufacture of carbon black, transferred their assets to the United Carbon Company, the inventories for cash and the other assets in exchange for shares of preferred and no-par common stock of the transferee. Thereafter the Liberty Carbon Company was dissolved and the taxpayer received in liquidation 72 shares of the preferred and 288 shares of the common stock of the United Carbon Company. The preferred stock at the time had a fair market value of $100 per share and the common stock, $26.88 per share.

The taxpayer adopted $7,200 as the basis for computing the gain from the redemption of the preferred stock in 1934, and reported a gain of $720. But the Commissioner of Internal Revenue asserted, and the Board of Tax Appeals held, that the true basis was a proportionate part of the basis of the assets of the Liberty Carbon Company, for which the stock of the United Carbon Company was exchanged. Computing the profit on this basis, the Commissioner determined a deficiency of $933.12.

The Board's decision was grounded upon the theory that the transaction in 1925, wherein the United Carbon Company acquired the assets of the Liberty Carbon Company, constituted a reorganization and nontaxable exchange within the meaning of § 203 of the Revenue Act of 1926, Ch. 27, 44 Stat. 9, 26 U.S.C.A.Int.Rev. Acts, page 148, and therefore the basis of the preferred stock received by the taxpayer in 1925 and redeemed in 1934, was the allocated cost of the property exchanged therefor, by reason of the provisions of § 113(a) (6) of the Revenue Act of 1932, Ch. 209, 47 Stat. 169, 26 U.S. C.A.Int.Rev.Acts, page 515, and § 113(a) (12) of the Revenue Act of 1934, Ch. 277, 48 Stat. 680, 26 U.S.C.A.Int.Rev.Acts, page 700. The taxpayer challenges this theory, but not the computation of the tax, if the theory is sound.

The relevant provisions of § 203 of the Revenue Act of 1926 are as follows:

§ 203 (a) "Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section."

§ 203 (b) (3) "No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization."

§ 203 (h) (1) (A) "The term 'reorganization' means a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation)."

The facts with regard to the formation of the United Carbon Company and the transfer to it of the assets of the Liberty Carbon Company and other like business organizations in 1925 were found by the Board of Tax Appeals as follows:

"In that year, the Liberty Carbon Co., along with 11 other corporations and a partnership, transferred specific properties and inventories to United Carbon Co., in exchange for preferred and common stock, and cash.

"At the time of that exchange the transferred assets of Liberty Carbon Co. had a total original cost of $318,873.40. The cost of such of these assets as were transferred in exchange for United Carbon Co.'s stock was $213,856.02, but at the time of the exchange, these assets had a fair market value of $256,293.92. Such cost of assets not transferred for stock was $105,017.38, of which $79,539.43 covered inventory. For the purposes of the transaction, this inventory was taken at cost and United Carbon Co. paid Liberty Carbon Co. $79,539.43 in cash, for it.

"The stock received by Liberty Carbon Co. in exchange for that part of its assets which aggregated $256,293.92 in market value on the day of the transfer, as above set forth, consisted of 1,506 shares of $100.00 par value preferred and 6,024 shares of no par common stock of United Carbon Co. All these transfers were effectuated as a part of a plan of reorganization, to bring together, in one organization, the assets of various corporations engaged in the manufacture of carbon black, United Carbon Co. having been organized under the laws of Delaware to acquire the assets of the various concerns in pursuance of the plan.

"Thereafter, the Liberty Carbon Co. was dissolved, and petitioner, being a stockholder, received a liquidating distribution of 72 shares of the preferred stock of United Carbon Co. and 288 shares of its common stock. At the time of the exchange between Liberty Carbon Co. and United Carbon Co., the preferred stock received by petitioner had a fair market value of $7200.00 and, based upon the Liberty Carbon Co. stock exchanged therefor, an allocated value of $3,485.67.

"Petitioner reported no taxable profit in his income tax returns for 1925 as a result of the exchange of stock of the Liberty Carbon Co. for stock of the United Carbon Co., nor was any information relative to the transaction set forth in the return."

The ultimate undisputed findings of the Board were that the Liberty Carbon Company transferred 92 per cent, i. e., "substantially all" of its assets, to the United Carbon Company for stock and cash; and that the stock received in the exchange represented 73 per cent, i. e., a "material" part of the value of the transferred assets. These facts being established, the conclusion that a statutory reorganization took place is inevitable. The taxpayer received the United Carbon Company stock within the meaning of § 203(b) (3) as the result of a transaction in which the Liberty Carbon Company, a party to a reorganization, exchanged property "in pursuance of the plan of reorganization, solely for stock or securities" in United Carbon Company "another corporation a party to the reorganization". The term "reorganization" as defined in § 203(h) (1) (A) is satisfied by a merger or consolidation in which there is an acquisition by one corporation of substantially all the property of another. This conclusion is supported by decisions of the Supreme Court in Nelson Co. v. Helvering, 296 U.S. 374, 375, 56 S.Ct. 273, 80 L.Ed. 821; Helvering v. Minnesota Tea Co., 296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284; G. & K. Mfg. Co. v. Helvering, 296 U.S. 389, 56 S.Ct. 276, 80 L.Ed. 291. These decisions are summed up by the Supreme Court in LeTulle v. Scofield, 308 U.S. 415, 420, 60 S.Ct. 313, 315, 84 L.Ed. 355, as follows: "We have held that where the consideration consists of cash and short term notes the transfer does not amount to a reorganization within the true meaning of the statute, but is a sale upon which gain or loss must be reckoned. We have said that the statute was not satisfied unless the transferor retained a substantial stake in the enterprise and such a stake was thought to be retained where a large proportion of the consideration was in common stock of the transferee, or where the transferor took cash and the entire issue of preferred stock of the transferee corporation. And, where the consideration is represented by a substantial proportion of stock, and the balance in bonds, the total consideration received is exempt from tax under Sec. 112 (b) (4) and 112(g)."

From the facts in the pending case outlined above, it is clear that the consideration for the transfer did not consist merely of cash or evidences of indebtedness, but was represented by a substantial proportion of preferred and common stock in the transferee corporation, so that the transferor retained a substantial stake in the new enterprise.

The chief reliance of the taxpayer in the pending case is the prior decision of this court in United Carbon Co. v. Commissioner, 90 F.2d 43, in which the same transactions relating to the formation of the United Carbon Company and its acquisition of the assets of the Liberty Carbon Company and other corporations were considered. We were called upon in that case to decide the proper basis to be used by the United Carbon Company for the computation of depletion and obsolescence of the assets acquired by it from the transferors. We pointed out that under § 204 (c) of the Revenue Act of 1926, 26 U.S. C.A.Int.Rev.Acts, page 154, the basis upon which depletion and obsolescence are to be allowed in respect to property is the same as that provided for determining gain or loss upon the sale or disposition thereof, and we held that the basis to be applied by the United Carbon Company was the fair market value of the transferred property at the time of acquisition and not the cost of the assets to the transferors. The implication from the decision was that the gain upon the transfer of the assets to the United Carbon Company was taxable and did not fall within the excepting provisions of § 203. Consequently the taxpayer says that this court has already decided the present controversy in his favor by holding in effect that the transaction did not constitute a statutory reorganization, and that the consideration received by the Liberty Carbon Company was the equivalent of cash.

■ It should be noticed first that the principle of res adjudicata may not be invoked because the parties before the court at this time are not the same as those who were in the former case. Moreover, our prior decision was limited to a single point, and we expressed no opinion as to the applicability of § 203(b) (3) upon which the Commissioner now relies. In the former case the argument of the parties was directed and limited to § 203 (b) (4) and § 204(a) (8). § 203(b) (4) is as follows: "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each

is substantially in proportion to his interest in the property prior to the exchange."

Section 204 (a) (8) merely provides that if the transaction comes within § 203 (b) (4) the basis for determining gain or loss on the sale or disposition of property shall be the same for the transferee as it would be in the hands of the transferor. We held that § 203 (b) (4) was not applicable because the amount of stock received by each of the transferors was not substantially in proportion to his interest in the property prior to the exchange. Our attention was not directed to § 203(b) (3) and we made no ruling upon its applicability to the facts.

■ It is obvious that § 203 contemplates that no gain or loss shall be recognized for taxation purposes in a number of different contingencies that are separately described in the several subsections, and that a given transaction may fall outside the terms of one sub-section and yet satisfy the terms of another. This view is illustrated by the Supreme Court in Nelson Co. v. Helvering, supra, (296 U.S. at page 377, 56 S.Ct. 273, 80 L.Ed. 821) where the court pointed out that a statutory reorganization may occur under the terms of § 203(h) (1) (A), although the transferor does not acquire a controlling interest in the transferee as is provided in § 203(h) (2); and again in Helvering v. Minnesota Tea Co., supra, (296 U.S. at page 384, 56 S.Ct. 269, 80 L.Ed. 284) where the court pointed out that a taxpayer may find relief under Clause A of 203(h) (1), although Clause B may not be applicable to his case.

That is the situation in the present case. § 203(b) (4) is inapplicable for the reasons stated in our former decision; but § 203(b) (3) correctly describes the transaction. Such would have been our decision in the prior case had the Commissioner not based his contention entirely upon a sub-section that did not fit the facts.

It is true that if the consideration received by the Liberty Carbon Company had been the equivalent of cash, none of the exceptions contained in § 203 would have been applicable; but our holding that one of these exceptions was inapplicable did not imply that only the equivalent of cash had been received. Nor do we think that the taxpayer correctly interprets § 203 when he contends that if two or more transferors are engaged in the transac-

tions referred to in § 203, the only applicable sub-section is § 203(b) (4); and therefore, in such an event, there can be no statutory reorganization under § 203 (b) (2) or § 203(b) (3) unless the transferors receive amounts of stock proportionate to their interests in the property transferred. Such a construction would unduly restrict the meaning of the statute and run counter to the decisions of the Supreme Court. Nothing in our former opinion justifies such an interpretation.

Since the transaction under consideration in the present case falls within the terms of § 203(b) (3), no gain or loss was recognizable at the time of the transfer in 1925; and the basis for computing the gain of the taxpayer in 1934 is the cost of his allocable share of the assets of the Liberty Carbon Company. This was indeed the attitude that the taxpayer himself assumed in regard to the transaction in 1925, because he made no report in his tax return for that year of gain from the acquisition of the stock of the United Carbon Company.

The decision of the Board of Tax Appeals is therefore affirmed.