*Decision will be entered under Rule 50.*

W. C. Robinson, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 99038. Promulgated September 25, 1940.

*Charles D. Hamel, Esq., L. I. Park, Esq.*, and *C. F. Rothenburg, Esq.*, for the petitioner.

*William A. Schmitt, Esq.*, for the respondent.

OPINION.

MELLOTT: As stated above, the sole question is whether the transaction whereby Phelps Dodge transferred, to a group of its stockholders, 290,000 shares of National stock for 290,000 shares of its own stock was a distribution in partial liquidation of Phelps Dodge, as respondent contends, or a sale or exchange of a capital asset, as petitioner contends. If the respondent's contention is correct, the entire amount of the gain or loss must be recognized for tax purposes under the provisions of section 115 (c) of the Revenue Act of 1934,[1] while if petitioner's contention is correct, the amount of gain or loss to be taken into account in computing his net income, is limited

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \* \*

(c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117 (a), 100 per centum of the gain so recognized shall be taken into account in computing net income. In the case of amounts distributed (whether before January 1, 1934, or on or after such date) in partial liquidation (other than a distribution within the provisions of subsection (h) of this section of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b) of this section for the purposes of determining the taxability of subsequent distributions by the corporation.

by the provisions of section 117 (a) [2] of the same act, pertaining to capital gains and losses.

Section 115 (i) of the Revenue Act of 1934 defines the term "amounts distributed in partial liquidation" as meaning "a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock." If the transaction in issue comes within this definition, respondent's determination must be sustained; if not, then petitioner must prevail.

Respondent takes the position that Phelps Dodge, for reasons satisfactory to itself, disposed of an undesirable but substantial portion of its business and assets; that by thus limiting its field of endeavor and restricting its business activities, it effected a partial liquidation; that the disposal of all of the National stock, together with the transfer of the legal title to the land, plant, and equipment, constituted liquidation in every sense of the word; that the reacquisition of 290,000 shares of its stock by Phelps Dodge constituted a redemption of the stock without the necessity of cancellation or any other affirmative act of retirement and despite any intent to reissue; and that the fact the reacquired stock has been carried on its books as treasury stock is immaterial, inasmuch as the record shows no definite intent or fixed purpose to reissue. He also contends that under the provisions of section 115 (c) and 115 (i), *supra*, a "partial liquidation" has taken place whenever a corporation has distributed money or assets in redemption of a part of its outstanding stock, even though a "winding up" of the affairs of the company is not contemplated, and that the distribution here under consideration was such a distribution.

Petitioner contends that the transfer to him of 164,605 shares of National stock for an equal number of shares of stock of Phelps Dodge was not a distribution in partial liquidation of the latter corporation. In support of this contention he points to the provisions of section 115 (i), *supra*, defining such a distribution to mean a distribution by a

---

[2] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) GENERAL RULE.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

100 per centum if the capital asset has been held for not more than 1 year;

80 per centum if the capital asset has been held for more than 1 year but not for more than 2 years;

60 per centum if the capital asset has been held for more than 2 years but not for more than 5 years;

40 per centum if the capital asset has been held for more than 5 years but not for more than 10 years;

30 per centum if the capital asset has been held for more than 10 years.

corporation in complete cancellation or redemption of a part of its stock, and urges that the statutory definition is not satisfied where as here the stock was placed in the corporation's treasury for future use and was not retired. He also urges that Phelps Dodge did not liquidate any part of its business and, in executing the contract with petitioner, it was not motivated by a desire to liquidate any part of its business. Petitioner takes the position that Phelps Dodge intended to consummate, and did consummate, a sale or exchange of the outstanding stock of National for 290,000 shares of Phelps Dodge stock, and calls attention to the fact that the parties have stipulated that he, pursuant to the contract with Phelps Dodge, "exchanged [his] 164,605 shares of stock of the Phelps Dodge corporation for 164,605 shares of stock of" National, and that the word "sale" was used in the written contracts between the parties, in the minutes of the board of directors of Phelps Dodge, and in recording the transaction on its books.

Prior to the passage of the Revenue Act of 1934, gains resulting from distributions in partial liquidation were treated and taxed as capital gains. Therefore, whenever a shareholder relinquished part of his stock in a corporation and received in exchange therefor money or assets, any gain resulting to him was taxable as a capital gain, unless the distribution was "essentially equivalent to the distribution of a taxable dividend", in which event it was taxable as a dividend under section 201 (g) of the 1926 Act or under section 115 (g) of the 1928 and subsequent acts.

The necessity for determining whether there was a sale or exchange of all or a part of a shareholder's stock to a corporation, or whether he received a distribution in partial liquidation, arises from the change made by section 115 (c) of the 1934 Act, requiring that in cases of distributions in partial liquidation 100 per centum of the gain realized is to be taken into account in computing net income. In other words, prior to 1934 a distribution in partial liquidation was treated the same as a sale or exchange of the stock and the amount of the gain or loss to be taken into account in computing net income was limited by the capital gains provisions of the various acts, whereas under the 1934 Act, in the case of a partial liquidation, such gain is no longer limited by the capital gains provisions and 100 percent thereof is subject to both normal tax and surtax.

In support of his contention, respondent cites and relies upon a number of cases involving the question of whether a corporation had made a distribution in partial liquidation or had made a distribution in cancellation or redemption of a part of its stock "at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribu-

tion of a taxable dividend." *Commissioner* v. *Quackenbos*, 78 Fed. (2d) 156; *Commissioner* v. *Cordingley*, 78 Fed. (2d) 118; *James D. Robinson*, 27 B. T. A. 1018; affd., 69 Fed. (2d) 972; *Alfred E. Fuhlage*, 32 B. T. A. 222. It is true, as respondent points out upon brief, that holding was made in some of the cited cases that a "partial liquidation" had occurred although a "winding up" of the affairs of the corporation was not contemplated (*Commissioner* v. *Quackenbos, supra; Commissioner* v. *Cordingley, supra*), and even though there was no intention on the part of the corporation to liquidate (*Salt Lake Hardware Co.*, 27 B. T. A. 482). It is not without significance, however, that, in every instance where it was held that a distribution in partial liquidation had been effected, it was accompanied by a retirement of a part of the corporation's stock.

In the instant proceeding neither party contends that the distribution received by petitioner was taxable as a dividend. The parties have stipulated that petitioner exchanged his shares of Phelps Dodge stock for an equal number of shares of National, and the transaction must be treated as a "sale or exchange" for tax purposes unless it falls within the definition of a distribution in partial liquidation contained in section 115 (i), *supra*.

Obviously, Congress did not intend that all transfers of money or assets by a corporation to its stockholders in exchange for a portion of its stock held by them should be treated as distributions in partial liquidation. If such had been its intention, it would not have limited such distributions to those made in "complete cancellation or redemption" of a part of a corporation's stock. Moreover, the fact that the distribution resulted in the cessation of a part of the corporation's business, as argued by the respondent, or did not do so, as argued by petitioner, is not controlling. The question is not whether there was a partial liquidation in the sense in which these words are generally used, but whether there was a partial liquidation as defined in the statute.

While neither party argues that the phrase "complete cancellation or redemption" is ambiguous, their divergent views as to its meaning justify some reference to the reports of the congressional committees at the time the Revenue Act of 1924 was under consideration. The following excerpt from these reports tends to support the petitioner's contention that there can be no "complete cancellation or redemption" of a part of a corporation's stock unless it is retired:

The theory of liquidating dividends is extended to distributions in partial liquidation. If a corporation *retires* a portion of its capital stock, the transaction is treated, from the point of view of the stockholders as a sale of its stock. If a corporation distributes an amount in *partial retirement* of its capital stock, the amount thereof is to be considered as a return of capital, and taxable

only if, and to the extent that, it exceeds the basis of the stock. [House Rept. No. 179, 68th Cong., 1st sess.; Senate Rept. No. 398, 68th Cong., 1st sess. Italics ours.]

Moreover, the respondent has tacitly adopted this interpretation of the quoted phrase in his regulations. In article 115–5 of Regulations 86 it is said:

* * * A complete cancellation or redemption of a part of the corporate stock may be accomplished, for example, by the *complete retirement* of all the shares of a particular preference or series, or by taking up all the old shares of a particular preference or series and issuing new shares to replace a portion thereof, or by the *complete retirement* of any part of the stock, whether or not pro rata among the shareholders. [Italics ours.]

The Circuit Court of Appeals for the First Circuit apparently had the same view; for it stated, in *Commissioner* v. *Cordingley, supra,* that "The statute contemplates partial liquidation of corporations, *accompanied by partial retirement of outstanding stock.*" [Emphasis supplied.]

Since the passage of the Revenue Act of 1934, two published opinions have been promulgated by this Board in which the question was whether stockholders had made sales of their stock or whether they had received distributions in partial liquidation. *William A. Smith,* 38 B. T. A. 317, is relied upon by the petitioner, while *Benjamin R. Britt,* 40 B. T. A. 790, is relied upon by the respondent. In *William A. Smith, supra,* the facts were somewhat similar to those now before us. Smith was the owner of 45 of the 1,000 outstanding shares of the capital stock of a corporation. Being in need of money, he offered to sell his shares to the corporation for $1,000 per share. The corporation accepted and paid him $45,000. After receiving the stock the corporation did not cancel or retire it, but carried it on its books as treasury stock. It was held that the transaction constituted a sale of the shares by Smith to the corporation, and that it was not a distribution in partial liquidation.

In *Benjamin R. Britt, supra,* a corporation redeemed its preferred stock at $110 a share, and it was held that the stockholders received a distribution in partial liquidation. In distinguishing this case from *William A. Smith, supra,* it was said:

But, in the *Smith* case, all the elements of a sale were present. The reacquired stock was not retired, but was held in the treasury of the corporation subject to reissuance. The last sentence of paragraph (b) of the stock certificates, involved here, provides that preferred stock purchased or redeemed or discharged shall not be reissued. The redemption, in other words, was to be complete. It is proper to presume, therefore, that that procedure was followed when petitioner's stock was reacquired in 1934. * * * This factual situation prevents, in our opinion, the application of the *Smith* case here.

The 290,000 shares of stock received by Phelps Dodge from petitioner and his associates were neither canceled nor retired. They were placed in its treasury as treasury stock and have been continuously so held. The evidence discloses that they were placed in the treasury with the intention that they would be used to purchase additional properties, and that officials of the corporation, preliminary to taking this action, received the advice of counsel to the effect that under the laws of the State of New York treasury stock could be used for the acquisition of properties without regard to any preemptive rights of Phelps Dodge stockholders. Notwithstanding this evidence, respondent argues that an intention to retire the stock is manifested by the fact that none of it has been used by Phelps Dodge during the five years which have elapsed since it was acquired, even though the corporation has bought large properties and expanded its business. He therefore contends that for the purposes of the instant case the stock should be considered in effect as canceled or *retired*.

It is true that since Phelps Dodge placed the 290,000 shares in its treasury it has expended a substantial sum in expanding its plant facilities and purchased the properties of the United Verde Copper Co. as set forth in our findings. It is also true that it did not use the treasury stock for either of these purposes. However, we know of no rule of law, and respondent has not cited any, holding that treasury stock acquired by a corporation for the purpose of using it to purchase properties will be considered to have been completely canceled or retired if it is not used for that purpose within a certain period of time after its acquisition. The 290,000 shares are still available as treasury stock for the purchase of properties, and the continued treatment of these shares as treasury stock indicates an intention not to cancel or retire them, rather than to do so.

The stipulated facts indicate, and it is accordingly held, that Phelps Dodge did not make a distribution "in complete cancellation or redemption of a part of its stock." Petitioner therefore did not receive a distribution in partial liquidation when on March 21, 1935, he exchanged his 164,605 shares of Phelps Dodge stock for an equal number of shares of National, and the amount of the gain or loss to be taken into consideration in computing his net income is governed by the provisions of section 117, *supra*.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

ARNOLD and OPPER concur only in the result.