AMELIA H. COHEN TRUST et al. v. COM-
MISSIONER OF INTERNAL
REVENUE.

No. 7664.

Circuit Court of Appeals, Third Circuit.
June 26, 1941.

S. Leo Ruslander, of Pittsburgh, Pa.
(James A. Graham, of Pittsburgh, Pa., on
the brief), for petitioner.

Wm. L. Cary, Sp. Asst. to Atty Gen.
(Samuel O. Clark, Jr., Asst. Atty. Gen.,
and Sewall Key, Sp. Asst. to Atty. Gen.,
on the brief), for respondent.

Before MARIS, JONES, and GOOD-
RICH, Circuit Judges.

JONES, Circuit Judge.

The question here is whether the acquisi-
tion of petitioner's stock by the corpora-
tion which issued it was a distribution in
partial liquidation of the corporation or
the purchase of a capital asset of the peti-
tioner. The answer to that question will
determine whether the petitioner is tax-
able under Section 115(c) and (i) of the
Revenue Act of 1936 [1] on one hundred per

---

[1] Section 115(c) and (i) of the Revenue
Act of 1936, c. 690, 49 Stat. 1648, 26
U.S.C.A. Int.Rev.Acts, pages 868, 871,
in part here material, reads as follows:

"§ 115. Distributions by Corporations
 *       *       *       *       *
"(c) Distributions      in      liquidation.
Amounts distributed in complete liqui-

cent. of the gain realized or under Section 117(a) [2] of the same Revenue Act on the basis of a fixed proportion of the gain.

In 1936, the petitioning trust was and, for more than ten years immediately preceding, had been the owner of 447 shares of the first preferred ($100 par) stock of Homer Laughlin China, Inc., a Delaware corporation. The by-laws of the company provided that the first preferred stock might be redeemed at $105, plus accrued dividends, upon sixty days' notice. As an alternative to redemption, the by-laws authorized the company's board of directors to invite offers of sale by the holders of such stock at prices not to exceed $105 per share. In the exercise of the latter power, the board of directors of the company on October 16, 1936 resolved to send to all holders of its first preferred stock a letter informing them that "The company will buy for retirement on December 26, 1936" 10,000 shares or more of such stock, and inviting them to offer their stock to the company at prices not to exceed $105 per share. The letters were mailed to the stockholders on October 24, 1936, on which date there was issued and outstanding 11,116 shares of the first preferred stock out of a total authorized issue of 30,000 shares. In response to the company's request for offers of sale, the petitioner on November 10, 1936 offered to sell its 447 shares at $105 per share. The company accepted the petitioner's offer on November 16, 1936, and the petitioner delivered its stock to the company on December 10, 1936, receiving during that month the sale price in full. Out of the 11,116 shares of the stock outstanding on October 24, 1936, 8,705 shares (including the petitioner's 447 shares) were acquired by the company as a result of its request for offers of sale and in a manner similar to the company's acquisition of the petitioner's stock. The 8,705 shares thus obtained were retired by the company on or before December 31, 1936. The remaining 2,411 shares outstanding were called and retired by the company on April 1, 1937. The authority of the company to issue first preferred stock continued until October 1, 1937, when the company's charter was amended so as to terminate that authorization. No first preferred shares were issued by the company between October 16, 1936 and October 1, 1937.

The taxpayer reported the gain derived from the disposition of its stock as a gain resulting from the sale or exchange of a capital asset held by the taxpayer for more than ten years and taxable, therefore, under Section 117(a) of the Revenue Act of 1936, to the extent of thirty per cent. of the gain. The Commissioner, treating the gain as having been received by the taxpayer in partial liquidation of the company, determined a deficiency in tax on the basis that the gain was taxable, under Section 115 of the Revenue Act of 1936, to the extent of one hundred per cent. thereof. On the taxpayer's petition for a redetermination of the assessment, the Board of Tax Appeals sustained the Commissioner's action; and, the taxpayer now petitions for a review of the Board's decision.

The petitioner contends (1) that the parties to the stock retirement transaction contemplated a sale by the petitioner and

dation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117(a), 100 per centum of the gain so recognized shall be taken into account in computing net income, except in the case of amounts distributed in complete liquidation of a corporation.

\* \* \* \* \*

"(i) Definition of partial liquidation. As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

[2] Section 117(a) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, pages 873, 874, provides, in part here material, as follows:

"§ 117. Capital Gains and Losses

"(a) General rule. In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

\* \* \* \* \*

"30 per centum if the capital asset has been held for more than 10 years."

The pertinent Treasury regulation on distributions in liquidation is Art. 115-5 (as amended by T.D. 4759, 1937-2, Cum. Bull. 117) of Treasury Regulations 94, promulgated under the Revenue Act of 1936.

(2) that, since the shares upon retirement assumed the status of authorized but unissued stock under the law of the corporation's domicile (Delaware),[3] the cancellation or redemption was incomplete for the purposes of Section 115.

■ As to the petitioner's first contention, it may be conceded that its disposition of its stock partook of the nature of a sale in that the petitioner ceded its ownership for a consideration. Such is always true with respect to liquidation dividends and was so recognized by both Houses of Congress when the 1934 Revenue Act with its similar Section 115(g), 26 U.S.C.A. Int. Rev.Acts, page 704, was under consideration.[4] But, even though the transaction presents some of the elements of a sale, the gain derived therefrom does not fall within the reach of Section 117(a). Section 115(c) expressly provides that "Despite the provisions of section 117(a), 100 per centum of the gain * * * shall be taken into account in computing net income" in the case of gain resulting from the partial liquidation of a corporation. Congress thus singled out for special tax treatment the gains derived from corporate distributions in partial liquidation. Under well known rules of construction the general provision in Section 117(a) would give way to Section 115(c) where the latter is applicable. Missouri v. Ross et al., 299 U.S. 72, 76, 57 S.Ct. 60, 81 L.Ed. 46; Ginsberg & Sons, Inc. v. Popkin, 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704; Hellmich v. Hellman, 276 U.S. 233, 237, 48 S.Ct. 244, 72 L.Ed. 544, 56 A.L.R. 379. In the light of the statute as drafted, resort to rules of construction is really not indicated. Section 117(a) is expressly excluded from operation in cases where Section 115(c) attaches. Consequently, the answer to the question whether the distribution by the corporation was in complete cancellation or redemption of a part of its stock must be wholly unaffected by whether or not the transaction could in any view be deemed to have been a sale.

The question is whether the distribution in the instant case was, to use the definition of Section 115(i), "a distribution by a corporation in complete cancellation or redemption of a part of its stock * * *." That this is the inquiry, the petitioner con-

firms in its brief where it says that "the only question involved" before the Board of Tax Appeals "was the narrow one of whether there was a *complete* cancellation of petitioner's stock upon its acquisition by China, Inc."

■ The Board held that the stock was retired and that the cancellation or redemption was complete. This determination calls for consideration of the legal effect of the action taken by the company in its acquisition and retirement of the stock. The Board thought that the petitioner failed to distinguish between the legal status of treasury stock and of retired stock in their relative bearings upon whether the cancellation or redemption is complete. Treasury stock is an asset in the company's treasury and may be resold at any time as suits the corporate owner's purpose, while retired stock ceases to exist as an evidence of interest or ownership in corporate property. Borg et al. v. International Silver Co., 2 Cir., 11 F.2d 147, 150, affirming D.C., 11 F.2d 143. The effect of the distinction between treasury stock and retired stock has been reflected in the decisions. In Benjamin R. Britt v. Commisssioner, 40 B.T.A. 790, 796, affirmed 4 Cir., 114 F.2d 10, it was held that, since the corporation, there, did not have the power to reissue the reacquired stock, the redemption was complete. And, in W. C. Robinson v. Commissioner, 42 B.T.A. 725, where the stock which the issuing corporation received from Robinson was retained in the company's treasury for subsequent corporate use in the purchase of additional properties, it was held that the stock was not retired and that the cancellation or redemption was incomplete. The same conclusion had been reached in William A. Smith v. Commissioner, 38 B.T.A. 317, where the issuing corporation purchased a small number of its shares from a stockholder and placed them in its treasury.

■ The petitioner argues that while "treasury stock is a clear and recognized example of reacquired corporate stock incompletely cancelled [in fact not cancelled at all] * * * retired stock is likewise incompletely cancelled where, *as here, it may be reissued.*" (Emphasis supplied.) The fallacy in the petitioner's contention lies in the portion which we have

[3] Section 27 of the Delaware Corporation Law, Chapter 65, Revised Code of 1935, § 2059, as amended.

[4] See House Report No. 704, 73rd Cong., 2nd Sess., p. 29, and Senate Report No. 558, 73rd Cong., 2nd Sess., p. 37.

emphasized. The reacquired stock in the instant case could not be reissued. After it had been obtained by the company "for retirement on December 26, 1936" it was actually retired on or before December 31, 1936. It went out of existence as an evidence of interest in corporate assets and was not available to the company for resale or reissue. Granted that the company's authority to issue first preferred shares up to 30,000 in number was still extant, that meant no more than that the company could issue new shares within the authorized limit, but the 8,705 shares (including the petitioner's 447 shares) which the company obtained pursuant to its request for offers of sale were retired and extinguished. Thereby, the cancellation or redemption of those shares became complete and the distribution made by the company in acquiring them was made in partial liquidation. In computing the petitioner's net income, it was therefore proper for the Commissioner to take into account the gain realized by the petitioner from his disposal of his stock in the China company to the extent of one hundred per cent. of the amount thereof.

The decision of the Board of Tax Appeals is affirmed.