### HAMMANS v. COMMISSIONER OF INTERNAL REVENUE.

No. 164.

Circuit Court of Appeals, Second Circuit.

July 9, 1941.

David J. Colton, of New York City (Erwin N. Griswold, of Cambridge, Mass., and Alex M. Hamburg, of New York City, of counsel), for petitioner-appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen. and Sewall Key and Newton K. Fox, Sp. Assts. to Atty. Gen., for respondent-appellee.

Before L. HAND, AUGUSTUS N. HAND and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The question before us is whether, in computing income taxes upon gain realized through the exchange by the petitioner of certain shares of preferred stock of Bulova Watch Co. for cash and common stock, the tax should be laid under § 115(c) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 868, upon 100% of the gain because the distribution was a partial liquidating dividend, or under § 117(a), 26 U.S.C.A. Int.Rev.Acts, page 873, upon only 30% of the gain because the distribution was not a partial liquidating dividend.

For more than ten years prior to October 22, 1936, the taxpayer owned 900 shares of no par convertible preferred stock of the Bulova Watch Co. cumulative as to dividends of $3.50 per annum, having a cost basis of $30,985. The capital of the company consisted of 50,000 shares of preferred stock without par value, all outstanding, and 325,000 shares of common stock without par value, of which 275,000 shares were outstanding and 50,000 were held in reserve for conversion of the pre-

ferred stock. The preferred stock could be redeemed by the company at $55 per share.

On August 24, 1936, the company offered holders of its preferred stock a "Plan of Exchange", under which, if consummated, each holder of preferred stock would be entitled to receive for each share surrendered for cancellation (1) one share of common stock, (2) $22.50 in cash, and (3) dividends accrued and accruing and unpaid to December 1, 1936, of $17.50 per share. It was a part of the plan that "pursuant to the Articles of Incorporation, as amended, * * * all Preferred Stock exchanged under the Plan will be retired and shall not be reissued".

The plan was accepted by the petitioner and other holders of preferred stock aggregating 49,861 shares. As a result, the petitioner on October 22, 1936, surrendered her 900 shares of preferred stock and received in exchange $21,037.50 of cash and 900 shares of common stock having a market value of $32.50 per share, or a total of $50,287.50. In addition to this, she received $15,750 in payment of accumulated dividends accrued to December 1, 1936, upon her 900 shares of preferred stock. Of the remaining 139 shares of preferred stock outstanding after the exchange of the 49,861 shares in 1936, 20 were converted into common on February 8, 1937, and 119 were redeemed on March 1, 1937, thus completely eliminating the entire 50,000 preferred shares.

■ It is apparent from the foregoing, and indeed is conceded, that the taxpayer realized a gain on surrender of the preferred stock. That such was the case appears from the following computation:

Cash ...................... $21,037.50
Common stock (900 shares) having a market value of $32.50
   per share .................. 29,250.00

Total .................... $50,287.50
Less cost basis of............ 30,985.00

Gain ................... $19,302.50

The Commissioner and the Board of Tax Appeals each held that the above gain arose from a partial liquidation as defined in § 115(i) of the Act of 1936 and that the tax, therefore, was to be computed upon 100% of the gain pursuant to § 115(c) rather than upon 30% of the gain under § 117(a).

Section 115(i) reads as follows: "(i) Definition of partial liquidation. As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

Section 115(c) of the Act of 1936 relating to distributions in liquidation provides that: "Despite the provisions of § 117(a), 100 per centum of the gain * * * recognized shall be taken into account in computing net income, except in the case of amounts distributed in complete liquidation of a corporation."

■ It is argued on behalf of the taxpayer that the foregoing provision was intended to prevent distributions in partial liquidation from being used to avoid taxes upon the full amount of gains paid from earnings, and not from capital. Whatever the intention may have been, the provision permits no such limitation. If the preferred stock was originally issued at $55, as the balance sheet perhaps indicates, and was thereafter redeemed at $55 in cash, the entire gain realized by the taxpayer would be paid out of capital, and yet there would undeniably be a partial liquidation within the meaning of § 115(i). If it be assumed that the preferred stock was originally issued at $55 and finally was cancelled by a payment of $22.50 in cash and $32.50 in common stock, any gain realized would be out of capital. We see no difference, in respect to the application of § 115(c), between the two situations. It may be added, that if there had been no preferred stock and the plan had involved merely a reduction of capital to the extent of one-half of the common stock, and if all earnings had been distributed in dividends prior to the time the plan went into effect, cash distributed in complete cancellation of a part of the common stock would be wholly derived from capital, and yet the provisions of § 115(c) would apply.

Undoubtedly there are cases, and the present may be one of them, where preferred stock is issued for less than the amount for which it is redeemed. The excess over the issuing price would require payment out of earnings of the premium received, and to that pro rata extent the taxpayer's gain would be derived from earnings rather than capital. It is evi-

dent from the foregoing that in some cases the gain would be derived wholly from capital and in most cases it would be principally paid out of capital. But the statute gives no indication that the application of § 115(c) is to be determined by such contingencies.

■ We hold that the distribution in the present case, whereby the preferred stock was eliminated and cash and common stock were distributed by the corporation in exchange was "in complete cancellation * * * of a part of its stock." Our view of the meaning of "cancellation" is in general accord with the decision in McClain v. Commissioner, 311 U.S. 527, 61 S.Ct. 373, 375, 85 L.Ed. 319, where the Supreme Court construed the word "retirement" as "broader in scope than 'redemption,'" though including the latter.

■ It is quite unimportant that the certificate of reclassification of shares was not executed until January 28, 1937. The Plan was acceded to and carried out in 1936 by an agreement between preferred stockholders and the company that the certificates for the preferred stock should be surrendered in exchange for certificates of the common stock and cash, and that all preferred stock exchanged under the Plan should "be retired and * * * not be reissued." Though the corporation pending the completion of the legal formalities of recapitalization continued to carry the retired preferred shares as though they were treasury stock, they manifestly were unavailable for resale, and in equity the cancellation was complete.

■ It is contended that the words of § 115(i) that "the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock" necessarily exclude any distribution where an exchange of stock is part of the distribution. We think, however, that the words "amounts distributed in partial liquidation" include any case where there is a complete cancellation of outstanding stock and cash is distributed in connection with that liquidation. Anything else would render the provision capricious in its effect by enabling stockholders to avoid a tax upon the full amount of their gains to the extent of the cash realized by merely adding a small percentage of stock. We think the cancellation here was complete within the meaning of § 115(i) and that the cash came

within the meaning of the term "amounts distributed in partial liquidation."

Order affirmed.