MAURICE A. MITTELMAN AND CARMYLE MITTELMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1568.   Promulgated October 18, 1945.

*Sidney N. Weitz, Esq.*, for the petitioners.
*Lawrence R. Bloomenthal, Esq.*, for the respondent.

934

OPINION.

Van Fossan, *Judge*: The first issue for our decision is whether the exchange by the petitioner in 1940 of 435 shares of class B stock of Michigan, plus a sum of money, for all the capital stock of New York and Delaware constituted a sale or exchange of capital assets or a distribution in partial liquidation. The petitioner contends that the transaction constituted a sale or exchange of capital assets and that under section 117 of the Internal Revenue Code, he is taxable upon only 50 percent of the gain arising therefrom. The respondent has determined that the transaction constituted a distribution in partial liquidation and that by virtue of section 115 (c) of the code the petitioner's gain is all taxable. The material portions of that section (prior to its amendment by the Revenue Act of 1942) are set forth below.[1]

The Internal Revenue Code contains its own definition of a partial liquidation. Section 115 (i) of the code provides:

Definition of Partial Liquidation.—As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

---

[1] SEC 115. DISTRIBUTION BY CORPORATIONS.

\* \* \* \* \* \* \*

(c) Distributions in Liquidation.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117, the gain so recognized shall be considered as a short term capital gain. \* \* \*

The stipulated facts show that as of January 31, 1940, the petitioner, in accordance with his agreement with Goetz, delivered to Michigan his 435 shares of class B stock of that company, together with a sum in cash, and received in exchange therefor all the stock of the New York and Delaware corporations. The shares so exchanged by the petitioner were never canceled or retired by Michigan, but have been carried on its books as treasury stock. There has been no reduction in the capitalization of Michigan.

Our task is to determine whether this transaction falls within the statutory definition of a partial liquidation. The problem here involed was discussed in some detail in *Alpers* v. *Commissioner*, 126 Fed. (2d) 58. There the court observed:

\* \* \* The Board and the courts have made a distinction between acquisition by a corporation of its own stock for the purpose of retiring it, that is, for "complete cancellation or redemption," and acquisition for the purpose of holding it as "treasury stock" until reissued. Acquisitions of the first type are within section 115 (c). *Hammans* v. *Commissioner*, 2 Cir., 121 F. 2d 4; *Amelia H. Cohen Trust* v. *Commissioner*, 3 Cir., 121 F. 2d 689; *Britt* v. *Commissioner*, 40 B. T. A. 790, affirmed 4 Cir., 114 F. 2d 10; *Souther* v. *Commissioner*, 39 B. T. A. 197. Purchases of the second type are not, and the gain resulting therefrom is taxable under section 117 (a). *William A. Smith* v. *Commissioner*, 38 B. T. A. 317; *W. C. Robinson* v. *Commissioner*, 42 B. T. A. 725. \* \* \* the respondent has made no contention that the distinction between retired stock and treasury stock is not justified by the statute, and we shall assume that it is.

Clearly, in the case before us there was no "complete cancellation or redemption" of the petitioner's shares. They were retained by Michigan as treasury stock and could have been reissued at any time.

The respondent contends that the setting aside of doubtful or worthless assets and making provision for payment of one-half of any recovery thereon to the petitioner shows an intention to wind up the business and liquidate the corporation. We do not so view these actions. The petitioner and Goetz were desirous of dissolving their business association and, as shown by their agreement, had decided on a formula for dividing the assets evenly. Certain assets thought to be doubtful or worthless were given no value. Thus it was natural to provide that in case recovery should be had on any of these items the petitioner should receive half of the amounts so recovered.

The respondent's contention that the business of Michigan was greatly curtailed is not supported by the evidence. The record shows that its business has continued uninterruptedly since the events here involved transpired. True it is, as the respondent points out, the business of Michigan was reduced to the extent that it no longer owned New York and Delaware. However, Michigan received a substantial consideration in exchange for the stock of these two corpora-

tions. Furthermore, whether or not the business activities of the corporation were curtailed is not dispositive of our present question. "The statute applies, not to a distribution in liquidation of the corporation or its *business*, but to a distribution in cancellation or redemption of a part of its *stock*." *Hamilton Allport*, 4 T. C. 401. Since there was no cancellation or redemption of any part of the corporation's stock here, we must conclude that the transaction was in fact what it purported to be—a sale of the stock—and that the gain arising therefrom is taxable as such. See *William A. Smith*, 38 B. T. A. 317; *W. C. Robinson*, 42 B. T. A. 725; *Harold F. Hadley*, 1 T. C. 496.

The next issue involves the determination of the basis upon which to compute the petitioner's gain. This issue was affirmatively raised by the respondent in the amendment to his answer and hence the burden of proof with respect thereto is upon him.

The issue arises out of the controversy between the petitioner and the accounting firm of S. D. Leidesdorf & Co. concerning the alleged overpayment by the petitioner of $9,199.85 in connection with the exchange in 1940 of his stock in Michigan.

In computing his gain on the transaction the petitioner used a cost basis of $38,980.11, made up of the sums of $20,580.40, the cost of his shares of class B stock, and $18,399.71 cash paid to Michigan. In 1941 it was discovered that the accounting firm had erred in computing the amount of cash payment in that it should have been $9,199.86 rather than $18,399.71. The petitioner made demand on S. D. Leidesdorf & Co., the accounting firm, for $9,199.85, the amount of the overpayment, and when the demand was ignored instituted action for alleged damages in this sum. The action was at length settled by the payment of $8,000 to the petitioner by the accounting firm. The accounting firm was reimbursed by Michigan for this payment to the extent of $6,407.78.

In the amendment to his answer the respondent reduced the petitioner's basis to $29,780.26, representing the cost of the stock plus the amount the petitioner would have been required to pay in cash had the accountant's error not been made. He now concedes that the petitioner should not be required to use a basis smaller than an amount representing the value of his stock plus the net cash actually paid by him. He therefore contends that the petitioner's basis should be reduced from $38,979.11,[2] used in the 1940 return and accepted in the notice of deficiency, to $30,979.11,[2] the difference representing the $8,000 received by the petitioner in settlement of his action against S. D. Leidesdorf & Co. He argues further that, in any event, since $6,407.78 of the $8,000 received by the petitioner emanated from Michigan, the petitioner's basis should be adjusted to the extent of such amount.

---

[2] These figures, used in the respondent's brief, are apparently the result of an error in addition. The correct amounts should be $38,980.11 and $30,980.11, respectively.

In support of this contention the respondent relies upon *Borin Corporation*, 39 B. T. A. 712; affd., 117 Fed. (2d) 917. In that case the taxpayer in 1930 entered into a contract for the purchase of certain dry ice machinery. In 1932, before the original contract had been fully performed, the parties canceled their original agreement and entered into a new purchase contract. The Board held that the taxpayer's basis for computing gain or loss on the sale of the machinery in 1934 was the price fixed in the second contract.

The facts in the instant case, in our opinion, are materially different from those in the *Borin* case, *supra*. There the parties to the original agreement canceled their contract and substituted another therefor. In the case at bar, however, no new contract was entered into between the petitioner and Goetz. The petitioner prosecuted his claim, not against the other party to the contract or the corporation to which he had made the overpayment, but against one not a party to the contract. His claim was not founded upon the contract, but upon the alleged tortious act of the accounting firm.

The respondent admits that no new contract was entered into here. However, he contends that the rule of the *Borin* case is applicable because a large part of the money received by the petitioner actually came from Michigan and because the accountants regarded themselves as acting on behalf of Michigan in paying the $8,000 to the petitioner.

While certain correspondence between Michigan and S. D. Leidesdorf & Co. was introduced showing their agreement to divide between them the payment to the petitioner, there is nothing to indicate that he was in any way a party to these collateral negotiations. There is no evidence that either Goetz or the petitioner considered the subsequent events to be a modification of their original contract. So far as the record shows, the contract was completely executed in 1940, when the petitioner delivered his shares of stock and paid the sum of $18,399.71. We are consequently of the opinion that the receipt by the petitioner in 1941 of the $8,000 was a result of a separate transaction, founded upon an entirely different claim, and that the petitioner's cost basis is the sum of $38,780.11, as used by him in his 1940 return. Whether the sum received by the petitioner in 1941 was, as he contends, a "return of capital" rather than taxable income is a question we do not decide, since it involves a taxable year not presently before us.

The final issue concerns the payments made to New York and Delaware in 1940 under the terms of the contract between petitioner and Goetz. Article XII of the agreement provided that if Michigan or Goetz should receive any recovery on account of certain assets which had been set aside as doubtful or worthless, one-half of the amounts so recovered should be paid to the petitioner or to Delaware or New York, whichever the petitioner might designate. Pursuant to designation by the petitioner, the sum of $2,872.39 available to the peti-

tioner in 1940 was distributed $1,436.20 to New York and $1,436.19 to Delaware. The petitioner did not report these sums in his income tax return for 1940. The respondent contends that these sums should be added to the petitioner's income for that year. Clearly these sums were available to the petitioner in 1940. Under the agreement he could choose either to receive them himself or could designate that they be paid to New York or Delaware. Accordingly, under the doctrine of *Helvering v. Horst*, 311 U. S. 112, and *Helvering v. Eubank*, 311 U. S. 122, such amounts constitute gain to the petitioner. Since they were paid pursuant to the contract of sale, however, such sums constitute long term capital gain and are taxable only to the extent of 50 percent of the amount thereof.

The respondent concedes that in computing the deficiency he erroneously failed to give the petitioner credit for a final payment of 1940 income tax amounting to $1,482.19 which was paid on December 13, 1941. This error can be corrected in the recomputation under Rule 50.

*Decision will be entered under Rule 50.*