STATE of Missouri ex rel. PINE LAWN BANK AND TRUST COMPANY, a Corporation, Relator-Appellant,

v.

William CULLEY, Commissioner of Finance, Department of Business and Administration, State of Missouri, Respondent.

No. 51251.

Supreme Court of Missouri, Division No. 2.

Jan. 10, 1966.

Motion to Transfer to Court En Banc or for Rehearing Denied

Feb. 14, 1966.

Gerwitz & Seegers, Gerald L. Seegers, St. Louis, for appellant.

Norman H. Anderson, Atty. Gen., Thomas J. Downey, Asst. Atty. Gen., Jefferson City, for respondent.

BARRETT, Commissioner.

The appellant-relator, Pine Lawn Bank and Trust Company, is as its name implies a bank and trust company organized and operated under Chapter 363, RSMo 1959, V.A.M.S., and subsequent amendments, governing trust companies. Under its articles of incorporation the trust company had an authorized capital of $60,000 represented by 600 shares of common stock of the par value of $100 per share. In May 1963 the company, according to the recitals of its notice and resolutions, proposed to *"retire 28 shares* of the outstanding stock by a charge to undivided profits, (of $44,800) and *without reduction of capital."* (Emphasis supplied throughout this opinion.) At the same stockholders' meeting it was also proposed *"to change"* the authorized capital from $60,000 to $300,000 repre-

sented by 3000 common shares of the par value of $100 per share. The company's proposal to amend its charter resolved that "whereas it is desirable that the authorized capital be increased and *certain capital adjustments be made,* a stock dividend shall be declared with respect to the holders of *572 shares* of stock of an additional *2428* common shares * * * so that for each one of such shares outstanding there will be issued *to the holder thereof an additional 4.24475524 like shares,* providing a capital account of this corporation of $300,000.00 *and the remaining 28 shares* of the 600 shares now outstanding, *having been tendered for retirement and cancellation, be so retired and cancelled by the corporation at its expense,* but not in an amount to exceed $44,800.00 *to be charged to undivided profits."* The trust company, as was its duty under the governing statutes, (particularly § 363.520 RSMo 1959 Supp., V.A.M.S.) submitted this proposal to the Commissioner of Finance who refused to issue the required certificate approving the transaction. Thereupon the Pine Lawn Bank and Trust Company instituted this proceeding in mandamus to compel the commissioner to issue the certificate.

The case was submitted to the circuit court upon the petition, the respondent-commissioner's return to the alternative writ, the relator's answer and an agreed statement of facts which for the most part consisted of the trust company's noted corporate documents, the notice and resolution of the stockholders' meeting and the correspondence between the relator and the respondent all of which culminated in the commissioner's denial of the certificate. Upon this record the circuit court made findings of fact, the essence of which was that insofar as it was proposed that the 28 shares "would be *retired and cancelled* * * * *with such expense to be charged to undivided profits* (the language of the resolution was *"by the corporation at its expense"*) * * * would violate Section 362.170(6) (relating to banks) and 363.260 (6) (relating to trust companies) RSMo

1959, V.A.M.S., prohibiting banks and trust companies from purchasing or holding shares of their own capital stock." In this connection the court further found that the relator bank and trust company sought to increase its capital stock "by declaring *a stock dividend applicable to only 572 shares* of the total 600 capital shares then outstanding, *without applying said stock dividend to the remaining 28 shares* of its capital stock." And finally the court found that relator's verified statement disclosed on its face "that retirement of 28 shares of relator's capital stock is to be made *'at a cost to the corporation',* relator, *of $44,800.-00."* Upon these findings of fact the court concluded as a matter of law, therefore, that in thus seeking "to retire and cancel" the 28 shares for $44,800, "with such cost to be charged to the Undivided Profits account of relator" violates § 363.260(6) RSMo 1959, V.A.M.S. This being true the court of course concluded that the commissioner's refusal to issue the certificate was not arbitrary, capricious or invalid.

For the most part the briefs of the parties are concerned with whether the proposed transaction in fact amounted to a purchase of its capital stock in direct violation of § 363.260(6) RSMo 1959, V.A.M.S., (the specific language being "A trust company, subject to the provisions of this chapter: * * * (s)hall not * * * be the purchaser or holder of any such shares") and was therefore invalid. The appellant trust company says that the declaration of a stock dividend *resulting in the increasing of capital* is not forbidden by law and that the court erred in concluding as a matter of law that "in seeking to retire and thereafter cancel" the 28 shares it violated the statute because "the action contemplated by appellant *would have the effect of merely reducing or decreasing* Capital" which is expressly permitted. The appellant contends that "the retirement and cancellation of outstanding stock" (the 28 shares) is not synonymous with "purchasing and holding" which the statute expressly condemns. In this connection in support of its argument

the appellant asserts that "when stock is retired and cancelled" it ceases to exist and unlike treasury stock cannot be voted.

■ In support of its contention the appellant cites a series of federal tax cases in which for example the problem was whether the acquisition of the taxpayer's stock "by the corporation which issued it was a distribution in partial liquidation of the corporation or the purchase of a capital asset." The answer to the question determined whether the taxpayer was to be taxed 100% of the gain realized under one section of the revenue act or only on a fixed proportion of the gain under another section of the tax law. Amelia H. Cohen Trust v. Commissioner of Internal Revenue, 3 Cir., 121 F.2d 689. But aside from the fact that these were all federal tax cases and were not concerned with the problems involved upon this appeal, they were all concerned with so-called ordinary business corporations as contrasted with banking corporations and trust companies. In this connection in passing it may be noted that a national bank may not "be the purchaser or holder" of its shares except as in the case of all banks, including Missouri, to prevent loss upon a debt previously contracted in good faith. 12 U.S.C.A. § 83. And even as to corporations in general there are several dangers or evils in "allowing a corporation, in the discretion of its management, to make purchases and sales of its own shares," Ballantine on Corporations, § 257, p. 609, and no sound reasons for a rule to the contrary. "Investment for profit, on which our system of corporate capitalism is based, presupposes that corporate earnings, unless needed for investment in plant or as working capital, should normally be returned to all of the shareholders ratably in the form of dividends." 89 Pa.L.R. 697, "Purchase And Redemption By A Corporation Of Its Own Shares," E. Merrick Dodd, Jr.; 1942 Wis.L.R. 157. As to corporations in general a majority rule permits repurchase of stock in the absence of statutory restrictions if in good faith and without prejudice to creditors or other stockholders.

There is a minority rule to the contrary but today the problem is usually dealt with by express statute, some states permitting repurchase if capital is not impaired, others permitting repurchase out of "surplus" only, while others have detailed statutes setting forth numerous limited specific uses of repurchase. But Missouri has not adopted any of these alternatives (59 Yale L.J. 1177, 1183), in this jurisdiction general business corporations have, subject to certain restrictions, power "to purchase, take, receive, or otherwise acquire, hold, own, * * * its own shares; provided, that it shall not purchase, either directly or indirectly, its own shares when its net assets are less than its stated capital, or when by so doing its net assets would be reduced below its stated capital." RSMo 1959, § 351.390, V.A.M.S.; Burg v. Bonne Terre Foundry Co.., Mo.App., 354 S.W.2d 303, 306. In a footnote to this statute in V.A. M.S. pp. 658–661, the law reviews above cited and other leading articles are fully noted.

■ But as indicated, there is no such statute in Missouri relating to banks or trust companies, trust companies may not purchase or hold their own shares unless as noted to prevent loss on a previously existing debt and even then "stock so purchased or acquired shall be sold at public or private sale or otherwise disposed of, within six months." RSMo 1959, § 363.260(6), V.A. M.S. One other collateral matter but with some bearing on the appellant's argument, in general "surplus," while including net earnings, constitutes a part of the working capital of the bank. 3 Zollmann, Banks & Banking, § 1471, p. 66. In this jurisdiction and specifically as to trust companies "surplus" and "surplus fund" are defined and as to the latter it "means a fund created pursuant to the provisions of this chapter by a trust company from its net earnings or undivided profits, which to the amount specified in this chapter is not available for the payment of dividends and cannot be used for the payment of expenses or losses so long as any such corporation has un-

divided profits." RSMo 1959, § 363.010(11)(12), V.A.M.S. Insofar as the proposition here involves capital in general it may be noted that "(a) reduction of the nominal capitalization of a corporation is regarded as a fundamental change in a corporation" and in the absence of a specific statute authorizing it, a corporation may not reduce the number of its authorized shares of stock "in the sense of permanently retiring a portion of them" (18 Am.Jur.2d, Corporations, § 233, p. 758; 44 A.L.R. 11, 13) and of course "the purchase of its own shares by a corporation constitutes a reduction of its capital, at least if the corporation has no surplus or if it cancels and retires the stock." 35 A.L.R.2d 1149, 1167. "Reduction of capital stock and distribution of capital assets upon reduction."

It may be that this general review of the subject has been unnecessarily belabored, at least in part, since in view of the facts and the specific contentions of the parties it is not necessary in the particular circumstance to definitively determine whether this particular transaction would constitute a "purchase" within the prohibition of the statute, § 363.260(6). In its brief the appellant concedes that "(t)he cancellation and retirement of 28 shares would, standing alone, be a violation of law in that it would have reduced Appellant's capital below $60,000 which would have been below the statutory minimum applicable to Appellant." But the appellant argues that "the joint action of declaring the stock dividend, coupled with the retirement of 28 shares, resulted in increasing the capital to $300,000.00" by declaring as the statutes (§§ 363.450, 363.-470) permit. This brings to the forefront the very meager facts of this record and of the entire proposal. It is mathematically demonstrable from the few bookkeeping figures set out in the appellant's proposed amendment to its articles of incorporation that the entire proposal would not result in an impairment of its capital structure and therefore an act of insolvency. Furthermore, in this particular instance, as the corporate records recite, all "600 shares were cast in favor" of the proposals. But it is not necessary to a decision of this case to determine whether there was in fact, as appellant calls it, "joint action" in declaring the dividend and the retirement of the 28 shares. In its briefed points and throughout the case, in fact the basis of the appellant's position is that the 28 shares were "retired and cancelled" out of undivided profits. But there are no facts upon which to base this contention, all that appears from the corporate documents and this record is that 28 shares "having been tendered for retirement and cancellation, be so retired and cancelled by the corporation *at its expense*" for $44,800. It does not appear who owns the 28 shares or why they were to be "retired and cancelled." There is no proof as to how this recited fact was accomplished, there is only the recital of the resolution "be so retired and cancelled," the physical shares are unaccounted for and it does not appear why the company would desire to pay $44,800 for these particular 28 shares with a par value of $2800. It is recited that thereafter the capital will be represented by 3000 shares but this is accomplished by a recited stock dividend with respect to "the holders of 572 shares of stock of an additional 2428 common shares" after assigning to each outstanding share "an additional 4.24475524 like shares."

Here again the appellant makes this admission: "We concede such an arrangement could not be forced upon an unwilling shareholder," but they say "it is just as certain that shareholders can agree among themselves to any variation of stock retirement or the declaration of dividends." And that may well be but they are not the only parties concerned, it is here that the Commissioner of Finance becomes involved. It is obvious from the appellant's admissions as well as from the recitals of its resolutions that 28 shares of common stock did not receive the same treatment as was given the 572 shares. The unexplained preferential treatment accorded 28 shares is the very thing to which the commissioner ob-

jected. It may be that in this particular instance, all stockholders agreeing and accepting "an additional 4.24475524 like shares" and permitting 28 shares to receive $44,800, the immediate parties to the corporate proceedings may contract among themselves as they please. At the same time, as a precedent and as far as good banking practice is concerned it is indeed understandable that the Commissioner of Finance would not and should not condone and approve the proposed procedure by issuing the required certificate. Even as to ordinary business corporations inequality of treatment of stockholders or shares of stock is not permitted. "Unless the statute authorizing a reduction of capital stock provides otherwise, or clearly implies otherwise, the reduction must operate equally on all stockholders or, at least, on all holders of the same class of stock." 18 Am.Jur.2d § 237, p. 761; 35 A.L.R.2d 1. c. 1180. In Townsend v. Maplewood Investment & Loan Co., 351 Mo. 738, 173 S. W.2d 911, it appeared that "(t)he company, through its board of directors, made a practice of repurchasing stock which had been sold, paying the stockholders therefor with money belonging to the corporation and marking the stock 'retired' or 'canceled.'" As to this the court said, "These transactions of repurchasing its stock were illegal and constituted a fraud upon the other stockholders as well as creditors of the corporation."

For the indicated reasons the appellant trust company was not entitled to a peremptory writ of mandamus and the judgment is therefore affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.